UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20091-CR-WILLIAMS

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

JULIO ESTRADA and BARTOLO
HERNANDEZ,

     Defendants.

_____/

## DEFENDANTS ESTRADA AND HERNANDEZ'S RENEWED MOTION FOR RELEASE PENDING APPEAL

Defendants Estrada and Hernandez have appealed their convictions on four counts of alien smuggling and one count of conspiracy. Before fully briefing this case in the Eleventh Circuit Court of Appeals, they sought release pending appeal in this court based on various "substantial questions of law or fact" featured in their motions for new trial. DE 459, 468. This court denied Estrada's motion without stating reasons. DE 466. It later explained that the Defendants' appellate questions/issues were not "substantial." DE 472. This court's ruling as to Estrada was affirmed upon motion for review in the Eleventh Circuit, and again upon motion for reconsideration.

Having now fully explored the district court record, counsel have identified a

*different* issue that they rely upon on appeal – that this court erred in denying their proposed instruction on the alien smuggling offenses, that separately set forth as elements that the government had to prove "[t]he alien did not have prior official authorization to come to, enter, or reside in the United States" *and* "[t]he defendant knew or recklessly disregarded that the alien did not have prior official authorization to come to, enter, or reside in the United States." DE 310: 28-29. Instead, this court conflated these two elements, instructing that the government was required to prove only that "the Defendant knew or was in reckless disregard of *the fact that* the alien had not received prior official authorization to come to, enter or reside in the United States." DE 331:24 (emphasis added); DE 531:102-03. By so instructing, this court effectively directed a verdict in favor of the government on the *disputed* statutory element of prior official authorization, instructing the jury it was "*a fact that*" the aliens had not received prior authorization.

Defendants submit that this constitutes a "substantial question of law." 18 U.S.C. § 3143(b)(1)(B). Additionally, Estrada's approximately 20-month compliance with his conditions of pretrial release, and Hernandez's approximately 22-month compliance with his conditions, and this court's act in subsequently extending them the privilege of self-surrender post-sentencing, DE 451, establish "clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released . . .." 18 U.S.C. §

3143(b)(1)(A).

Briefing on appeal was completed on July 23, 2019, more than four and one-half months ago. The Defendants have already served 23 months, Hernandez about half of his 46-month sentence, and Estrada more than one-third of his 63-month sentence. Hernandez will be eligible for a half-way house as early as the end of 2020. Based on the scheduling of several recent criminal appeals in the Eleventh Circuit, it would not be unusual if it took 18 more months or longer, into the summer of 2021, for the Defendants' appeals to be decided.[1]   Accordingly, this court should grant release upon reasonable bonds pending appeal.

## PROCEDURAL HISTORY

1. From shortly after their arrests, the Defendants have been released on monetary bonds.  DE 19, 20, 34, 51, 52, 53. On March 15, 2017, a jury found both Defendants guilty of conspiracy to smuggle aliens into the United States for the purpose of commercial advantage, in violation of 18 U.S.C. section 371, Count 1, and smuggling aliens into the United States for the purpose of commercial

---

[1] For example, three cases recently set on the Eleventh Circuit's February 10, 2020, oral argument calendar have been fully briefed for thirteen, eleven, and eight months, respectively.  *United States v. Waked*, No. 18-11951 (reply brief filed January 11, 2019); *United States v. Melgen*, No. 18-10991 (reply brief filed March 29, 2019), and *United States v. Tercier*, No. 18-10992 (reply brief filed April 11, 2019).  From the date of oral argument in *United States v. Takhalov*, 827 F.3d 1307 (11th Cir. 2016), an appeal, like this one, challenging the district court's denial of a requested jury instruction, approximately one-year passed before the case was reversed and remanded for a new trial.

advantage, in violation of 8 U.S.C. section 1324(a)(2)(B)(ii), Estrada on Counts 3, 5, and 6, and Hernandez on Count 2.  DE 41, 335, 336.

2.  On November 2, 2017, this court sentenced Hernandez to 46 months in prison, and Estrada to 63 months in prison.  DE 449, 450.  This court granted both the privilege of self-surrender to the Bureau of Prisons. DE 451. On November 20, 2017, this court entered its Judgments of Conviction.  DE 454, 455.

3. The Defendants timely appealed their judgments of conviction. DE 458, 461.  Both filed motions for release pending appeal.  DE 459, 468.  Estrada argued as "substantial questions of law and fact" (A) whether the government sufficiently alleged and proved that he conspired to smuggle, or smuggled, aliens to the United States, in light of Wet-Foot/Dry-Foot policy and the Cuban Adjustment Act; (B) whether this court abused its discretion by admitting evidence of uncharged bad acts; and (C) whether this court abused its discretion by admitting improper expert testimony.  DE 459: 4-5, 10-19.  Hernandez additionally argued as a basis for reversal on appeal whether the government sufficiently proved the substantive alien smuggling charge in Count 2.  This court summarily denied Estrada's motion without stating any reasons.  DE 466.  It later denied both Defendants' motions asserting that bond had been denied because the Defendants failed to raise "substantial questions."  DE 472.

5.  Mr. Estrada filed his Motion for Review of District Court Order Denying

4

his Motion for Release Pending Appeal in the Eleventh Circuit Court of Appeals. The court denied this motion, and his Motion for Reconsideration.

6.  As of July 23, 2019, the date Mr. Estrada filed his Reply Brief, this matter has been fully briefed in the Eleventh Circuit Court of Appeals.  Oral argument, *which the government does not oppose*, has not yet been set.

7.  DOJ Attorney Christopher J. Smith states that the government will oppose this motion on the ground that the Defendants have not raised a substantial question of law or fact, but will *not argue* that they present a risk of flight or danger to any person or the community.

## MEMORANDUM OF LAW

Title 18 U.S.C. section 3143, "Release or detention of a defendant pending sentence or appeal," provides that a district court "shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained" unless the court finds:  "(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in (i) reversal, [or] (ii) an order for a new trial . . .."

In *United States v. Giancola*, 754 F.2d 898 (11th Cir. 1985), the court explained the elements and standard for a district court to determine whether to grant

5

a defendant bail pending appeal under 18 U.S.C. section 3143(b).  The court held

that to establish entitlement to bond pending appeal, a defendant must demonstrate

> (1) that the defendant is not likely to flee or pose a danger to the safety
> of any other person or the community if released; (2) that the appeal is
> not for purpose of delay; (3) that the appeal raises a substantial question
> of law or fact; and (4) that if that substantial question if determined
> favorably to defendant on appeal, that decision is likely to result in
> reversal or an order for a new trial of all counts on which imprisonment
> has been imposed.

*Id.* at 901.

Regarding the "substantial question of law or fact," the court agreed with the

Third Circuit in ***United States v. Miller***, 753 F.2d 19 (3d Cir. 1985), that this meant

"one which is either novel, . . . has not been decided by controlling precedent, or . .

is fairly doubtful."  *Id.* at 900.  This is a question "of more substance than would be

necessary to a finding that is was not frivolous," *id.* at 901, "a 'close' question or one

that very well could be decided the other way."  *Id.*  ". . . [T]here are no blanket

categories for what questions do or do not constitute "substantial" ones.  Whether a

question is "substantial" must be determined on a case-by-case basis."  *Id.*

**1.   <u>The Defendants have presented a substantial question of law</u>.**

To show reversible error in denying a defendant's requested jury instruction,

a defendant must show that the instruction (A) was a correct statement of law, (B)

concerned a sufficiently important point raised during trial, and (C) was not

substantially covered by a charge actually given.  ***United States v. Takhalov***, 827

F.3d 1307, 1311, 1316 (11ᵗʰ Cir. 2016).  *See also **United States v. Dominguez***, 661 F.3d 1051, 1071 (11ᵗʰ Cir. 2011); ***United States v. Banks,*** 988 F.2d 1106, 1109 (11ᵗʰ Cir. 1993).  The legal correctness of a requested instruction is reviewed *de novo*. ***Takhalov****, 827 F.3d at 1312; **United States v. Gomez***, 580 F.3d 1229, 1233 (11ᵗʰ Cir. 2009).

### A.    The Defendants' proposed instruction was a correct statement of law.

Title 8, U.S.C. section 1324(a)(2), makes it a crime for "[a]ny person who, knowingly or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, [to] bring[]to or attempt[] to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with respect to such alien . . . .." (Emphasis added).  Giving each term its "plain and ordinary" meaning, *see, e.g., **United States v. Silva***, 443 F.3d 795, 797-78 (11ᵗʰ Cir. 2006), and each provision "its full effect," *see, e.g., **United States v. Alabama***, 778 F.3d 926, 938 (11ᵗʰ Cir. 2015), the government must prove, *inter alia*, "*the fact that* an alien has not received prior authorization to come to, enter, or reside in the United States . . . ." The court recognized as much in ***Dominguez*** when it stated: "Section 1324(a)(2) . . . prohibits any person from knowingly bringing or attempting to bring to the United States an alien who does not have prior official authorization to enter the United States." *Id.,* 661 F.3d at 1065. Judge Tjoflat clearly stated in his partially concurring and

dissenting opinion: "Whether the players had "prior official authorization" is also a question of fact." *Id.* at 1104 n. 64. *Accord* **United States v. Munoz**, 412 F.3d 1043, 1049-50 (9th Cir. 2005) ("[The defendant's] sufficiency challenge thus raises the question of whether the evidence presented would allow a rational jury to conclude that the aliens lacked prior official authorization….").

The Defendants requested that this court instruct the jury that the government had to prove not only that (1) the aliens the defendants sought to smuggle to the United States did not have prior authorization to come to, enter, or reside in the United States, but separately that (2) the defendants knew or recklessly disregarded that the alien did not have such prior official authorization.  DE 310:28-29.  This was a correct statement of law.  Both the text of section 1324(a)(2) and the majority and partially concurring and dissenting opinions in **Dominguez** establish that the jury must be instructed, and make a finding, on both of those elements.

Although the Eleventh Circuit has no standard jury instruction for this offense, the related instructions for unlawfully transporting and unlawfully concealing or harboring aliens, 18 U.S.C. § 1324(a)(1)(A)(ii), (iii), support the conclusion that the two elements are independent of each other.  In language and structure similar to section 1324(a)(2), section 1324(a)(1)(A)(ii) makes it an offense for any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to transport the alien within the

United States. Similarly, section 1324(a)(1)(A)(iii) makes it an offense for any person who "knowing or in reckless disregard of the fact that an alien has come to, entered, or remains in the United States in violation of law," to conceal or harbor the alien. Both jury instructions explicitly state that the government must prove the alien's illegal status in the United States, in addition to proving that the defendant knew, or acted in reckless disregard of, this illegal status. *See* Eleventh Circuit Pattern Jury Instructions (Criminal) 96.2,[2] 96.3[3] (2017). These instructions signal the Eleventh Circuit's recognition that, regarding a section 1324(a)(2) prosecution, the jury needs to be *separately* instructed on the question of whether the allegedly smuggled alien had "prior official authorization" to come to, enter, or reside in the U.S. At the very least, this is a "close" question that could very well be decided in the Defendants' favor.

Even this court, notwithstanding its refusal to separately instruct on the lack of prior official authority element, DE 310: 28-29; DE 331:24; DE 533:16, did not

---

[2] "The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: (1) an alien [entered] or [remained in] the United States in violation of law; (2) the Defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of the law; [and] (3) . . .."

[3] "The Defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt: (1) the alien [entered] [remained in] the United States illegally; (2) . . .; and (3) the Defendant either knew or acted in reckless disregard of the fact that the alien [had entered] [remained in] the United States in violation of law[.]"

quarrel with the proposition that the government was required to prove that the allegedly smuggled aliens lacked prior official authority to come to, enter, or reside in the United States. Upon denying the Defendants' post-trial motion for new trial based on the instruction it gave that failed to separately instruct on lack of prior official authorization, this court stated: "Nothing about this instruction suggests that the jury could convict either Estrada or Hernandez of alien smuggling absent a threshold finding that the relevant alien, in fact, lacked the requisite prior official authorization. Accordingly, the Court's jury instruction on the substantive offenses is *no basis for a judgment of acquittal*." DE 452:8 (emphasis added).

While the failure to instruct on the separate element may not have been a "basis for a *judgment of acquittal*," *id*. (emphasis added), it was a basis for a new trial. *Cf.* **Takhalov**, 827 F.3d at 1311-15 (new trial required where district court refused to give defendant's proposed instruction that correctly advised jury that merely *deceiving*, without an intent to injure, does not *defraud* as required by the federal wire fraud statute). Although this court appeared to agree with the Defendants that a condition precedent to any conviction was a finding that the allegedly smuggled aliens lacked prior official authorization, the instruction it gave failed to inquire whether the jury unanimously made this "threshold finding."

### B.      Defendants' instruction concerned a sufficiently important point.

The instruction that the Defendants proffered also concerned "a sufficiently

important point raised during trial." *Takhalov*, 827 F.3d at 1316.  An integral part of the defense was that the aliens the Defendants allegedly smuggled or conspired to smuggle had "prior official authorization" to come to, enter, and reside in the United States. The Defendants raised this issue through a variety of pretrial and trial motions. DE 121, 154, 156 (motion to dismiss based on theory that Cuban aliens had "prior official authorization" under Cuban Adjustment Act and then-effective "Wet-Foot/Dry-Foot" policy); DE 238, 246 (government's motion in limine to exclude defense evidence and argument regarding its theory of prior official authorization); DE 253, 254 (motion to reconsider order on motion to exclude); DE 258 (Ex Parte Response to the Government's Motion to Exclude Argument Related to Wet-Foot/Dry-Foot Policy). Defense counsel argued in summation that the government knew the baseball players it welcomed into the U.S. without visas were smuggled out of Cuba.  DE 532:101-02, 122, 125.

Given the diametrically opposed positions of the Defendants and the government on this vigorously litigated issue, the Defendants' proffered instruction dealt with a "sufficiently important point raised at trial." *Takhalov*, 827 F.3d at 1316. Indeed, the point was "so 'vital' that the failure to give the requested instruction seriously impaired the defendant[s'] ability to defend." *United States v. Banks*, 988 F.2d 1106, 1109 (11th Cir. 1993). *Cf. United States v. Eckhardt*, 466 F.3d 938, 947-48 (11th Cir. 2006) (in prosecution for obscene calls under the Communications

Decency Act, 47 U.S.C. § 223, defense not impaired by instruction that not only "obscene" calls were prohibited (as referenced in the statute), but also "lewd, lascivious, filthy, or indecent" phone calls, where defendant claimed calls were never made).

The Defendants argued at trial and on appeal, but the government disputed, that they were entitled to introduce evidence to show that the government's practice under the Cuban Adjustment Act, Wet-Foot/Dry-Foot policy, and other Executive Branch pronouncements, established *de facto* "prior official authorization" for the Cuban aliens they allegedly smuggled to come to, enter, and reside in the United States. But even if the Defendants were wrong, they were entitled to a jury determination of this issue, no matter how overwhelming the government's evidence may have been.  As the court observed in ***United States v. Rogers***, 94 F.3d 1519 (11th Cir. 1996): "Significantly, the Government bears the burden of proving beyond a reasonable doubt *all* elements of the crime charged," "no matter how overwhelming the evidence." *Id.* at 1524 (citing ***Sullivan v. Louisiana***, 508 U.S. 275, 277-78 (1993)) (emphasis added). The court likewise stated in ***United States v. Goetz***, 746 F.2d 705 (11th Cir. 1984): "There is no reason to deny the defendant the right to a jury determination when the evidence seems overwhelming in favor of the government." *Id.* at 708.

> Our conclusion is that an accused person has the same right to have 12 laymen pronounce upon the truth or falsity of each material averment

in the indictment, if the evidence against him is clear and uncontradicted, as he unquestionably would have if it were doubtful and conflicting. Inasmuch as jurors are rightly trusted, in close and difficult cases, to maintain the peace and dignity of organized society, surely they may be relied upon in the plain and simple ones.

*Id*. (citation omitted).

Because the Defendants were entitled to a jury determination of whether the aliens they allegedly smuggled lacked prior official authority to come to, enter, or reside in the United States, and this was a vital issue at trial, this issue Defendants raise on appeal is at least "close" and could very well be decided in their favor.

## C.   Instruction not substantially covered by one given.

Regarding the "threshold" element of a lack of prior official authorization, this court only instructed the jury that the government was required to prove that "the Defendant knew or was in reckless disregard of the fact that the alien had not received prior official authorization to come to, enter or reside in the United States." DE 331:24; DE 531:102-03. This instruction, unlike the one the Defendants requested, failed to hold the government to the burden of proving that each allegedly smuggled alien lacked prior official authorization to come to, enter, or reside in the U.S.

Not only did the instruction this court gave not substantially cover the instruction the Defendants requested, it directed a verdict against the Defendants on the essential, contested "lack of prior official authorization" element. *See, e.g.,*

*United States v. Rogers*, 94 F.3d 1519, 1524 (11th Cir. 1996); *United States v. Goetz*, 746 F.2d 705, 708 (11th Cir. 1984); *United States v. Bass*, 784 F.2d 1282, 1284-85 (5th Cir. 1986).  By instructing the jury that it was a "fact that the aliens had not received prior official authorization," the court "improperly guided the jury in such a substantial way as to violate due process."  *United States v. Isnadin*, 742 F.3d 1278, 1296 (11th Cir. 2014); *see also* *United States v. Richardson*, 233 F.3d 1285, 1292 (11th Cir. 2000).

*United States v. Goetz*, 746 F.2d 705 (11th Cir. 1984), strongly supports reversal.  The defendants were charged with willful failure to file a tax return.  *Id.* at 707.  On each IRS tax form for two years, the defendants wrote "object self incrimination" in the space requesting income information.  *Id.*  The government was required to prove (1) the taxpayer was required to file an income tax return, (2) the taxpayer failed to file a return, and (3) the tax payer's violation was willful.  *Id.*

In response to pretrial motions, the district court ruled as a matter of law that the documents submitted by the defendants were not "tax returns."  *Id.* at 707.  The juries at the defendants' separate trials were instructed accordingly. *Id.*

Reversing, the Eleventh Circuit concluded that the district court's instruction "invad[ed] the province of the jury" and effectively "directed a verdict as to one of the three elements of the alleged offense . . .."  *Id.* at 708.  It noted "[t]he rule is firmly established that the trial judge cannot direct a verdict in favor of the

14

government for all or even one element of a crime." *Id.* It quoted an earlier decision that emphatically stated this principle: "[N]o fact, not even an undisputed fact, may be determined by the Judge. The plea of not guilty puts all in issue, even the most patent truth. In our federal system, the Trial Court may never instruct a verdict either in whole or in part." *Id.* (citation omitted). *See also **United States v. Bass***, 784 F.2d 1282 (5th Cir. 1986) (in prosecution for submitting false employee tax withholding forms, district court reversibly erred by instructing jury defendant was an employee, thereby directing a verdict for the government on this contested issue).

As in ***Goetz*** and ***Bass***, by instructing that the government had to prove that "the Defendant knew or was in reckless disregard of *the fact that* the alien had not received prior official authorization to come to, enter or reside in the United States," DE 331:24; DE 533:16 (emphasis added), this court told the jury it was a "fact" that the allegedly smuggled aliens lacked "prior official authorization," relieving the government of proving this "fact." This court, thus, directed a verdict on this element in favor of the government, and against the Defendants. At the very least, this is a "close" question that could very well be decided on appeal in the Defendants' favor.

2. <u>Appellate decision in Estrada's favor will likely result in a reversal on all counts and a new trial.</u>

If the Eleventh Circuit agrees that this court erred in denying the Defendants' requested jury instruction or that the instruction it gave impermissibly directed a verdict in the government's favor, it is likely that the court will reverse the

15

Defendants' convictions on all counts and order a new trial.

The government argued on appeal that any instructional error regarding the substantive alien smuggling counts was harmless and, thus, not reversible. The government shoulders the heavy burden to prove "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *United States v. Takhalov*, 827 F.3d 1307, 1320, 1324 (11th Cir. 2016) (quoting *Neder v. United States*, 527 U.S. 1, 15 (1999)). Thus, the question in our case is two-fold: (1) whether "'the record contains evidence that could rationally lead' a jury to find that" the aliens the Defendants allegedly smuggled had prior official authorization to come to, enter, or reside in the United States, *see Takhalov*, 827 F.3d at 1321, and (2) whether the categories of evidence this court excluded as to the permission given to Cuban players by CBP personnel to enter U.S. ports of entry to claim asylum, as recited in the Defendants' *ex parte* proffer, DE 258, provided an alternate basis for the jury to decide that the players did have prior official authorization to enter the United States. The answer to both questions is "yes."[4]

Even the limited evidence on this subject that came through the government's own case established that several of the allegedly smuggled aliens came to, entered,

---

[4] While asserting on appeal that the players' lack of entry visas foreclosed any factual question of prior authorization, the government chose to ignore the excluded proffered evidence that players like Leonys Martin were in fact given permission by CBP personnel following CBP policies for the processing of Cubans to enter U.S. ports of entry and claim asylum. Ex. 258.

and ultimately resided in the United States despite not having visas.  On February 17, 2013, Omar Luis, the alien who Estrada allegedly smuggled in Count 3, entered the U.S. on foot with another Cuban alien, Alejandro Piloto, both without visas, through the Texas port of entry at Hidalgo. DE 523:46, 90: DE 528:105, 138.  They "walked up to [a check point at] the American border … [and] made contact with an immigration official who welcomed" them into the U.S.  DE 523:91; DE 528:105.  Luis remained in the U.S. and eventually signed a contract with the New York Yankees.  DE#523:21, 57.

On August 16, 2014, Dalier Hinojosa, the alien who Estrada allegedly smuggled in Count 5, flew from Port-au-Prince, Hait, to Miami.   He had no visa. DE 524:26-28.  After presenting himself to Customs and Border Patrol for an interview, DE 524:30, he was paroled into the U.S.  Gov. Ex. 24.  In November 2014, Hinojosa signed a contract with the Boston Red Sox for whom he played.  DE 524:33-34.  He later played for the Philadelphia Phillies.  DE 523:132.

On October 13, 2013, Jose Abreu, the alien who Estrada allegedly smuggled in Count 6, flew from Port-au-Prince, Haiti, to Miami.  DE 525:46-51.  He too had no visa.  *Id.*  Upon arriving at Miami International Airport, Abreu told immigration and Customs officials he was seeking admission under the Cuban Adjustment Act. After being interviewed, Abreu was paroled into the U.S.  DE 525:57-58, 97.  Shortly after Abreu signed a six-year contract with the Chicago White Sox.  DE 525:60.

17

On April 4, 2011, Leonys Martin, the alien who Hernandez allegedly smuggled in Count 2, entered the U.S. without a visa through the immigration check point at Laredo, Texas.  DE 512:45; DE 519:82-83, 85.  Martin told immigration and Customs officials that he was seeking political asylum.  DE 519:82-83.  Martin was processed and was paroled into the U.S.  DE 512:45; DE 519:85, 111. Martin stayed and became a player with the Texas Rangers.  DE 519:88-92, 119, 123.

In closing arguments, defense counsel urged that the government knew the baseball players it welcomed into the U.S. without visas were smuggled out of Cuba. DE 532:101-02, 122.  Counsel for Estrada argued:  ". . . [T]he United States wanted Cuban baseball players. . . . The best example of that is the border patrol agent who welcomed Omar Luis and Piloto at the border, asking for their autographs, getting hats from them."  DE532:125.

Based on this testimony, a rational jury could have readily concluded that Cuban aliens, at least *these* Cuban alien baseball players, had "prior official authorization," by seeking political asylum via the Cuban Adjustment Act or otherwise, to come to, enter, or reside in the U.S.  In the face of this evidence, the government cannot sustain its heavy burden of demonstrating beyond a reasonable doubt that the failure to instruct the jury on the government's burden to prove that these aliens *lacked* prior official authorization did not contribute to the verdicts.

The government also has argued on appeal that any instructional error

regarding section 1324(a)(2) was harmless as to the multi-object conspiracy charged in Count 1.  AB at 70 n. 12.  The government is wrong.

To be sure, if this court erred in its instructions regarding the substantive alien smuggling counts, the instructions regarding this object of the conspiracy was also flawed – it omitted that the aliens had to lack prior official authorization to come to, enter, or reside in the United States, in order to be the subject of this object of the conspiracy.  But given the general verdict form on Count 1, DE 335, 336, we have no way to know if the jury followed this flawed path to its verdict or, instead, one of the permissible, alternate routes.  *See Takhalov*, 827 F.3d at 1319 (instructional omission error not harmless where "the district court provided the jury multiple paths by which they could arrive at a guilty verdict. One of those paths . . . was an impermissible one.").  Under these circumstances, where the government alleged four different objects of the conspiracy and the instructions for one of those objects were fatally flawed, though it is *possible* that the jury may have convicted based on its agreement that the Defendants conspired to commit one of the other objects, "that possibility alone is insufficient to justify an affirmance."  ***United States v. High***, 117 F.3d 464, 470 (11th Cir. 1997) (citing, *inter alia,* ***United States v. Martinez***, 14 F.3d 543, 553-54 (11th Cir. 1994) (". . . [A]n alternate theory on which to base a conviction does not save the legal defect in the instruction")); *see also **United States v. Pendergraft***, 297 F.3d 1198, 1200 (11th Cir. 2002); ***United States v. Range***, 94 F.3d

614, 620 (11th Cir. 1996) ("A court must . . . be able to determine with absolute certainty that the jury based its verdict on the ground which it was properly instructed.") (quotations and citations omitted)).

**3.  Estrada and Hernandez present no risk of flight or danger to the community.**

The government has advised undersigned counsel that it will not oppose the motion on these grounds.

**4.  Appeal not for purpose of delay.**

Given that Estrada has filed his appellate briefs (while in custody) and is awaiting action by the court of appeals, delay is not a relevant factor at this point.

## CONCLUSION

Given the prospect of a new trial on all counts and the length of time that it will likely take for the court of appeals to render a decision, fairness dictates that the Defendants be able to await the appellate resolution at liberty upon appropriate conditions of release.

Respectfully Submitted,

**MARCUS NEIMAN &**
**RASHBAUM LLP**
One Biscayne Tower
2 South Biscayne Blvd., Suite 1750
Miami, Florida 33131
Telephone: (305) 400-4260
Email: jmarcus@mnrlawfirm.com
Counsel for Bartolo Hernandez

**BLACK, SREBNICK, KORNSPAN**
**& STUMPF, P.A.**
201 S. Biscayne Blvd., Suite 1300
Miami, Florida 33131
Telephone: (305) 371-6421
Email: hsrebnick@royblack.com
Counsel for Julio Estrada

BY:   /s/  *Jeffrey E. Marcus*
      JEFFREY E. MARCUS
      Fla. Bar No. 310890

BY:   /s/ *Howard M. Srebnick*
      HOWARD M. SREBNICK
      Fla. Bar No. 919063

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY certify that on December 9, 2019, I electronically filed and served

the foregoing document using CM/ECF.

*s/ Howard Srebnick*

HOWARD SREBNICK