UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-20091-CR-WILLIAMS

UNITED STATES OF AMERICA

v.

BARTOLO HERNANDEZ,

    Defendant.
_____/

**DEFENDANT'S MOTION TO MODIFY SENTENCE
PURSUANT TO THE FIRST STEP ACT AND SECTION 3582(c)(1)(A)**

    Defendant, Bart Hernandez, ("Hernandez") has served most of the incarcerative prison sentence imposed by the Court in 2017. Presently, in accordance with Bureau of Prisons ("BOP") policies and recommendations, Hernandez is slated for release from incarceration on or about October 5, 2020. And though October is only 7 months away, there are compelling and immediate family circumstances which can be addressed with an immediate sentence modification to a home confinement program – namely, the caregiving needs of Hernandez's 84-year-old mother, Eloina. Hernandez's brother, Roland, who had been acting as Eloina's caregiver, had a severe psychiatric episode and ensuing hospitalization and is no longer able to act as her caregiver.

    As the only available family caregiver, Bart qualifies for a sentence modification under recent FSA sentence modification procedures enacted as part of 18 U.S.C. § 3582(c)(1)(A) that provide the Court with the power to modify sentences based on an "extraordinary and compelling" reason. Recently, the District Court of Massachusetts granted a similar sentence modification where the defendant was the only available family caregiver for his ailing parent. *See United*

*States v. Bucci*, 2019 WL 5075964 at * 1-2 (D. Mass.).[1] Unless the Court acts, Hernandez's family will not find relief as BOP predictably has denied Hernandez's compassionate release request. In fact, since enactment of the Comprehensive Crime Control Act in 1984, there is not a single reported instance of a family-based sentence modification approved by BOP. This is precisely why Congress enacted the FSA reforms to empower district courts to exercise its broad discretion to determine when a low-risk prisoner's sentence should be modified to permit him to shoulder unforeseen family burdens such as those Mr. Hernandez's family is now facing.

## FACTUAL HISTORY

On January 2, 2018, Hernandez self-surrendered to the Low Security Correctional Institution at Butner, North Carolina. Hernandez has served more than 26 months of his sentence and earned all available good conduct time through exemplary conduct. As a result, Hernandez is now scheduled for release from his prison facility on or about October 5, 2020.[2] *See* Exhibit 1, Individualized Reentry Plan, dated February 20, 2020, and Sentence Computation Sheet. This release could in theory have been as early as April 5, 2020 under incentive-based programs that are part of the First Step Act such as the "earned conduct time" program; however, BOP is not

---

[1] As the Court is well aware, Hernandez filed an appeal to his conviction which is pending oral argument in April 2020. The existence of a pending appeal does not undermine this Court's jurisdiction over this motion as the Court is authorized to address collateral matters during the pendency of the criminal appeal. *See, e.g.*, *Mahone v. Ray*, 326 F.3d 1176, 1179 (11th Cir. 2003). Moreover, a grant of relief will not deprive the appellate court of jurisdiction because Hernandez seeks modification to home confinement which remains a form of imprisonment and because Hernandez's appeal challenges the basis for conviction and not the terms of Hernandez's sentence.

[2] Hernandez's release date to home confinement is calculated backwards from an April 5, 2021 statutory release date. BOP has recommended that Hernandez be placed in home confinement ("HC") or a residential center/halfway house ("RRC") 151-180 days prior to the statutory release date. Given that Hernandez already has a job and home, it is likely that Hernandez will be placed in home confinement on or around October 5, 2020, or shortly thereafter, under the BOP placement review factors. *See* Ex. 1. Otherwise, Hernandez will be placed in a halfway house.

now fully implementing these FSA programs.[3]

Hernandez has one living parent, Eloina, who presently resides in Queens, New York. Eloina is 84 years old and suffers from degenerative ocular disease and cancer that renders her functionally blind. She also suffers from severe atherosclerosis and has mobility limitations. *See* Ex. 2, Hernandez Family Circumstances Motion to Warden Donna Smith, dated September 24, 2019. Eloina recently battled cancer to remission but requires frequent medical monitoring to prevent recurrence of the disease, including eye injections every six weeks, and personal care to perform her activities of daily living. *See id.* Neither of Hernandez's two brothers, Roland and Virginio, can presently act as caregivers to Eloina. Roland had been caring for Eloina up until last year when he suffered a psychiatric breakdown while in Eloina's presence. *See* Ex. 3, Verified Petition of Mark J. Russ, M.D., July 23, 2019, *In re: Roland Hernandez*, Index No. 40473/19 (N.Y. Sup. Ct. Westchester Cty). As a result, Roland was involuntarily admitted to New York Presbyterian Hospital where he initially refused treatment for severe paranoid schizophrenia. *Id*. The hospital then sought and acquired an order from the New York Supreme Court, Westchester Division, authorizing involuntary administration of pharmaceuticals to Roland under New York's Mental Hygiene law. *Id*., Evaluation for Treatment Over Objection, Affirmation in Support of Application to Treat Over Objection, Dimitry Francois, M.D., William Apfeldorf, M.D., July 23, 2019. Though Roland has now stabilized after receiving involuntary treatment, he is not able to

---

[3] The First Step Act reform package made significant changes to the "Earned Conduct Time" program. *See* First Step Act, § 602, 18 U.S.C. § 3624(c)(2) ("The Bureau of Prisons shall, to the maximum extent possible, place prisoners with lower risks and lower needs on home confinement for the maximum amount of time permitted under this paragraph"). Hernandez's minimal risk of re-offending and FSA eligibility, *see* Ex. 1, left him eligible to earn up to 15 days per year of additional sentencing relief upon full implementation of First Step. However, BOP has not implemented these changes and Hernandez faces the real probability that his sentence will be extended beyond the term a similarly-situated offender would serve if sentenced today only because of a lag in the implementation of First Step and its incentives.

provide Eloina with the care that she needs given his mental instability and prior violent outbursts.

Since this time, Eloina has not succeeded in obtaining consistent in-home care or transportation to medical treatment and other required daily living needs and has had to rely on a diminishing group of acquaintances to assist her. Hernandez's other brother, Virginio, lives alone in New Jersey three hours away, is employed full-time at a warehousing and shipping operation and is not positioned to provide personal care, arrange medical monitoring, or perform activities of daily living with Eloina. *See* Ex. 2.

If placed on home confinement, Bart has the capacity to provide his mother with daily care and a suitable place to live. Ex. 2. Hernandez also would be in a position to transport his mother to her medical appointments and other required activities of daily living. *Id.* In short, Bart is the only available family caregiver.

Last fall, Hernandez applied directly to BOP and the warden of his facility for a compassionate release placement to home confinement so he could provide care for his mother. However, Hernandez's application was denied because BOP policy does not permit compassionate release to care for an ailing parent. *See* Ex. 4 Memorandum Decision (citing BOP Program Statement 5050.50).

## MEMORANDUM OF LAW

As part of the First Step Act, signed into law on December 21, 2018, Congress comprehensive overhauled sentence modification procedures codified at 18 U.S.C. § 3582(c)(1)(A). Pub. L. No. 115-391, 132 Stat. 5194 (2018). Prior to the change in law, the power to seek sentence modification resided exclusively with the Director of the Bureau of Prisons ("BOP"), who exercised it rarely and, often, delinquently. *See* U.S. Dep't of Justice Office of the Inspector General, The Federal Bureau of Prisons' Compassionate Release Program (Apr. 2013).

Sentence modifications based on family circumstances simply did not happen under the BOP's program administration.[4]

In an effort to redress this prior regime and liberalize Section 3582(c) practice, Congress freed district courts of BOP-imposed boundaries and granted courts broad discretion to determine when a low-risk prisoner's sentence should be modified based on compelling family circumstances. Section 3582(c)(1)(A)(i) provides, in pertinent part, that a court may reduce the sentence of an inmate upon the motion of the BOP or the inmate "after considering the factors set forth in section 3553(a) to the extent they are applicable," if the court finds that "extraordinary and compelling reasons warrant such a reduction." The meaning of "extraordinary and compelling" is not defined by the FSA; however several district courts have looked to the pre-FSA Sentencing Commission's policy statement for "helpful guidance on the factors that support compassionate release, although it is not ultimately conclusive." *Bucci*, at \*1; *see also United States v. Fox*, 2019 WL 3046086, at \*3 (D. Me.) (same).

The Policy Statement issued by the United States Sentencing Commission, § 1 B 1.13 of the Sentencing Guidelines, ("Guideline Policy Statement"), was last amended in November 2018, before the First Step Act was passed. The Guideline Policy Statement describes the following germane ways in which "extraordinary and compelling circumstances" may arise: (a) the death or incapacitation of the caregiver of the defendant's minor child or minor children; (b) the

---

[4] The BOP considers modification requests under a multi-tiered and restrictive set of rules set down in a "policy statement." The BOP Policy Statement is intended to implement the applicable Code of Federal Regulations (28 U.S.C. 571.60, *et seq*.), which, in turn, is intended to implement Section 3582(c)(1)(A). P.S. 5050.50, the current iteration of the BOP's sentence modification rule, considers two classes of applications based upon family circumstances: (i) death or incapacitation of a spouse who is the primary caregiver to the prisoner's minor children or (ii) incapacitation of a spouse with no other available caregiver. Not a single instance of family-based modifications appears in nationwide reporters since enactment of the Comprehensive Crime Control Act in 1984.

5

incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner; or (c) an extraordinary or compelling reason other than or in combination with one of the enumerated reasons. See U.S.S.G. § 1 B 1.13, n.1. The Policy Statement also acknowledges that "[t]he court is in a unique position to determine whether the circumstances warrant a reduction (and, if so, the amount of reduction)" to a sentence. *Id.*, n. 4.

Hernandez's request concerns a family circumstance that is similar to the enumerated situations that qualify under the Policy Statement. As the district court explained in *Bucci*, "Mr. Bucci is the only available caregiver for an ailing, close member of his family: his mother. This Court sees no reason to discount this unique role simply because the incapacitated family member is a parent and not a spouse." *Bucci* at *2. The *Bucci* Court then granted the defendant compassionate release effectively commuting the last 31 months of the defendant's sentence. As in *Bucci*, here, the distinction between the type of family circumstances Hernandez asks to address and the type of family circumstances listed in the Policy Statement is narrow, making it precisely the manner of request Section D was intended to address.[5] By exerting its authority to cover senior family obligations, the Court would become only the most recent institution to observe that a very old parent and a very young child are similarly dependent on others for care. The social tie between parent and child is identical whether viewed from the perspective of the

---

[5] Section D of the Guideline Policy Statement contains broad language encouraging a court to consider modifications when presented with circumstances that are distinct from or supplementary to the enumerated list of compassion deserving cases. See *id.* Further, BOP has published guidelines which instruct decisionmakers to focus on whether the primary caregiver is truly incapacitated, defining that term at various times to include "a severe injury," a "severe illness" or a "severe cognitive deficit." P.S. 5050.50, § 5, 6. Roland Hernandez's severe psychosis, and subsequent incompetence each independently satisfy each descriptor. Roland was, in fact, Eloina's caregiver and he is, in fact, incapable of continuing to fulfill that role.

adult parent to her child or from the adult child to her parent. Therefore, extending compassionate release only in the former case, and not the latter, is inconsistent with the Sentencing Commission's reservation of "catch- all" or "catch-similar" cases.

Hernandez has presented "extraordinary and compelling reasons" as understood within the context of family-based circumstances warranting compassionate release. If Roland Hernandez had been incapacitated while serving as the caregiver for Hernandez's minor children instead of their aged mother, this application would fit neatly within the various descriptions of "extraordinary and compelling" found within the Guidelines' Policy Statement. Moreover, Bart is more than capable of substituting for Roland based on his disabled-friendly apartment, ample living space, adequate financial resources and proximity to quality medical care. Bart is well-positioned to care for his mother if the Court orders that he be placed under home confinement for the remainder of his sentence.

The final consideration is the availability of other family caregivers. This motion is not contrived to avoid punishment but is an authentic family crisis. Eloina requires care and Roland clearly now cannot offer it. The only alternative, Bart's other brother, Virginio, is not suitable because Virginio lacks sufficient home circumstances, income and time to commit to the degree of care required by a visually impaired and barely mobile elderly person.

Accordingly, the controlling element here is whether circumstances that are "extraordinary and compelling" if applied to a minor child are equally "extraordinary and compelling" when applied to a senior parent. Because the court is not bound to the limited construction of "compassion" that the BOP has employed (to its own oft-publicized discredit), and because the Sentencing Guidelines, to the extent they speak to the issue at all, explicitly authorize the Court to modify sentences in unenumerated circumstances, the answer is yes. *See United States v.*

*Urkevich*, No. 8:03CR37, D.E. 179 (D. Neb. November 14, 2019) (modifying life sentence pursuant to 18 U.S.C. § 3582(c}(1 )(A) for extraordinary cause unrelated to any provision of the Guideline Policy Statement based on inherent powers and on "catch-all" provision).

Not only does the court possess the authority to modify Hernandez's sentence to a restrictive term of home confinement, it should exercise that authority here. While incarceration affects every prisoner's family, incarcerating Bart beyond his home for an additional 7 months creates a greater than warranted hardship on Eloina without an offsetting advance toward any sentencing objective that may impact Bart.  Over the past two-plus years, Hernandez has exhibited exemplary conduct in prison, having served as a translator to other prisoners, and engaged in rehabilitative exercises, both as an instructor and student, all as reported by prison officials where he is housed.  *See* Ex 1.

Hernandez already has incurred a severe sanction and will face professional limitations for the remainder of his life.  Compelling him to serve the remainder of his sentence at an institution when the same interval of time can be best used alleviating an unexpected hardship arising from the incapacitation of his mother's sole available family caregiver is inconsistent with the contours of compassionate release, even before Congress directed the broad expansion of that program with the recent First Step Act reforms.

For these reasons, the Defendant, Bart Hernandez, respectfully requests that the Court modify the remainder of his sentence to home confinement.

Respectfully submitted,

s/ Jeffrey E. Marcus
JEFFREY E. MARCUS
Fla. Bar No. 310890
jmarcus@mnrlawfirm.com
DANIEL L. RASHBAUM
Fla. Bar No. 75084
drashbaum@mnrlawfirm.com
Marcus Neiman & Rashbaum LLP
One Biscayne Tower
2 South Biscayne Blvd., Suite 1750
Miami, Florida 33131
Telephone: (305) 400-4260

## LOCAL RULE 88.9(a) CERTIFICATION

Undersigned counsel hereby certifies that we conferred with counsel for the government, which opposes the relief requested in this Motion.

s/ Jeffrey E. Marcus
JEFFREY E. MARCUS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was filed with the Court via the Court's CM/ECF System on March 6, 2020, on all counsel or parties of record listed on the Service List below.

s/ Jeffrey E. Marcus
JEFFREY E. MARCUS