UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 16-20091-CR-WILLIAMS(s)

UNITED STATES OF AMERICA

vs.

BARTOLO HERNANDEZ,
          Defendant.
_____/

# UNITED STATES' RESPONSE TO DEFENDANT BARTOLO HERNANDEZ'S MOTION TO MODIFY SENTENCE PURSUANT TO THE FIRST STEP ACT AND SECTION 3582(c)(1)(A)

The United States, through the undersigned Assistant United States Attorney, respectfully submits this Response to Defendant Bartolo Hernandez's Motion to Modify Sentence Pursuant to the First Step Act and Section 3582(c)(1)(A) [DE 553] and this Court's Order requiring a response by March 23, 2020 [DE 554]. This Court should deny the Motion because, while we can all empathize with the difficult challenges that the Hernandez family now faces, Hernandez has not meet his burden of proving extraordinary and compelling reasons for a sentence reduction or that he exhausted his administrative remedies.

## BACKGROUND

I.    Factual and Procedural Background

On March 15, 2017, a jury of his peers found Bartolo Hernandez guilty of one count of conspiring to commit an offense against the United States, in violation of 18 U.S.C. § 371; and one count of bringing an alien into the United States, in violation

of 8 U.S.C. § 324(a)(2)(B)(ii) [DE 335].  Before sentencing Hernandez for these two felonies, this Court ordered the Probation Office to prepare a Presentence Investigation Report ("PSI") [DE 401].

According to the "Personal and Family Data" section of Hernandez's PSI, Hernandez's mother, with whom he had a "close relationship," was – at the time of the PSI – 82 years of age and lived in Queens, New York [PSI ¶ 79].  Hernandez had two brothers, both of whom lived in the tristate area surrounding New York City [PSI ¶ 80].  The Probation Officer further described how Hernandez was married to a "marketing director" and had two "healthy" children who were – in June 2017 – 20 and 18 years of age [PSI ¶ 81].  Finally, according to the PSI, Hernandez and his wife had a total net worth of approximately $184,735 [PSI ¶ 95].

After considering the PSI, the arguments of counsel, and the factors in 18 U.S.C. § 3553(a), this Court entered a Judgement on November 27, 2017, in which it sentenced Hernandez to 46 months' imprisonment [DE 455].  The Court, however, permitted Hernandez to self-surrender to the Bureau of Prisons on or before January 2, 2018 [*id.*].[1]  Hernandez did so and is currently serving a term of imprisonment that will run until April 2021 [DE 553:2 n. 2, www.bop.gov/inmateloc/].

While in the custody of the Bureau of Prisons, Hernandez filed an "Inmate Request to Staff" dated September 24, 2019, in which he requested that the Bureau of Prisons file "a motion for sentence modification" because "extraordinary a[nd]

---

[1]  Hernandez filed a Motion for Release Pending Appeal [DE 468], and joined his co-conspirator's Motion to Stay Execution of Sentence and Postpone Surrender to Allow Appellate Review of Court Denying Release Pending Appeal [DE 469, DE 470]. This Court denied both Motions in an Order entered on December 29, 2017 [DE 472].

compelling reasons" justified the early termination of his sentence [DE 553-1:8]. Specifically, Hernandez argued that he needed "to care for [Hernandez's] invalid mother after [Hernandez's] brother, who was her caregiver, was involuntarily committed to a mental health hospital" [*id.*]. Hernandez further explained that neither of his brothers could care for his mother because one brother "is not permitted to interact" with her, while the other brother lives "nearly three hours" from her and had a home that "cannot be modified to address" the needs of his mother [*id.* at 9].

In contrast, according to Hernandez, his mother "can easily relocate to [his] home or [Hernandez could] change [his] location for home confinement or supervised release" to his mother's home in Queens, New York [*id.*] Moreover, Hernandez explained to the Bureau of Prisons that his wife – who earns $8,750 per month [*id.* at 25] – and one of his daughters – who is attending college – currently live in a "3 story, 3 bedroom, 2 1/2 townhome" in Fort Lauderdale, while Hernandez's other daughter lives in a "home nearby" [*id.* at 21]. Hernandez also described how he and his wife "have accumulated adequate savings to meet any need that might arise in the future" [*id.* at 22].

At no point in his request to the Bureau of Prisons did Hernandez explain why his wife or two children could not care for Hernandez's elderly mother. Moreover, he did not explain why, despite having "adequate savings to meet any need that might arise," Hernandez could not hire a professional to care for his sick mother until his release date in April 2021.

3

On October 21, 2019, the Bureau of Prisons denied Hernandez's request [DE 553-1:38]. The Bureau of Prisons reasoned that Hernandez's "request to care of your mother" did "not meet the criteria covered under Program Statement 5050.50" [*id.*]. The Warden explained, "You have the right to appeal this decision via the Administrative Remedy Process" [*id.*].

## II. Legal Authority

### A. *Relevant Statutory Authority*

In his Motion [DE 553], Hernandez seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A), also known as the "compassionate release statute." That section, as amended by the First Step Act on December 21, 2018,[2] provides in pertinent part:

> (c) Modification of an Imposed Term of Imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant *after the defendant has fully exhausted all administrative rights to appeal* . . . may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) *extraordinary and compelling reasons warrant such a reduction* . . .

---

[2] Prior to the passage of the First Step Act, while the Commission policy statement was binding on the Court's consideration of a motion under § 3582(c)(1)(A), such a motion could only be presented by the Bureau of Prisons. The First Step Act added authority for an inmate himself to file a motion seeking relief, after exhausting administrative remedies, or after the passage of 30 days after presenting a request to the warden, whichever is earlier.

4

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

(emphases added). Further, 28 U.S.C. § 994(t) provides: "The Commission, in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of title 18, shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples. Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." Accordingly, the relevant policy statement of the Commission is binding on this Court. *See Dillon v. United States,* 560 U.S. 817, 827 (2010) (where 18 U.S.C. § 3582(c)(2) permits a sentencing reduction based on a retroactive guideline amendment, "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," the Commission's pertinent policy statements are binding on the court).[3]

### B. *Relevant Sentencing Guidelines*

The Sentencing Guidelines policy statement appears at USSG § 1B1.13, and provides that this Court may grant release if "extraordinary and compelling circumstances" exist, "after considering the factors set forth in 18 U.S.C. § 3553(a), to

---

[3] An inmate does not have a right to a hearing. Rule 43(b)(4) of the Federal Rules of Criminal Procedure states that a defendant need not be present where "[t]he proceeding involves the correction or reduction of sentence under Rule 35 or 18 U.S.C. § 3582(c)." *See Dillon,* 560 U.S. at 827-28 (observing that, under Rule 43(b)(4), a defendant need not be present at a proceeding under Section 3582(c)(2) regarding the imposition of a sentencing modification).

the extent that they are applicable," and this Court determines that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."

Critically, in application note 1 to the policy statement, the Commission identifies the "extraordinary and compelling reasons" that may justify compassionate release. The note provides as follows:

> 1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2) [regarding absence of danger to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> ***
>
> (C) Family Circumstances.—
>
> > (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
> >
> > (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

For its part, consistent with note 1(D), the Bureau of Prisons promulgated Program Statement 5050.50, amended effective January 17, 2019, available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf, to set forth its evaluation criteria. That Program Statement delineated when compassionate release would be

appropriate based on, for example, "the death or incapacitation of the family member caregiver of an inmate's child," *id.* at 8, and the "incapacitation of an inmate's spouse or registered partner when the inmate would be the only available caregiver," *id.* at 9. The Bureau of Prisons, however, did not include as a basis for compassionate release circumstances similar to those that Hernandez raises in his Motion, namely care for a sick parent.

### C. *Relevant Case Law*

In general, a defendant has the burden of establishing the need for compassionate release. *United States v. Heromin,* 2019 WL 2411311, at *2 (M.D. Fla. June 7, 2019). As the terminology in the statute makes clear, this is a high burden because compassionate release is "rare" and "extraordinary." *United States v. Willis*, 2019 WL 2403192, at *3 (D.N.M. June 7, 2019) (citations omitted). This means that a defendant must establish circumstances "beyond what is usual, customary, regular, or common" and the need must be "so great that irreparable harm or injustice would result if [the relief] is not [granted]." *United States v. Burbidge*, Case No. 1:15-cr-172, 2019 WL 4863481, at *4 (D.N.D., Oct. 2, 2019) (citing *United States v. Cantu*, No. 1:05-CR-458-1, 2019 WL 2498923, at *5 (S.D. Tex. June 17, 2019) (quoting Black's Law Dictionary).

Where, as in this case, a defendant seeks compassionate release to care for a sick parent, he or she must overcome three hurdles. First, the inmate bears the burden of proving that he or she has satisfied the procedural prerequisites for judicial review—*i.e.*, that he or she "exhausted all administrative rights to appeal a failure of

7

the Bureau of Prisons to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden." 18 U.S.C. § 3582(c)(1)(A); *see United States v. Leverette,* 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of Bureau of Prisons remedies is a requisite for judicial review); *United States v. Roberson,* 746 F. App'x 883, 885 (11th Cir. 2018) (same).

Second, the defendant must prove that he or she is the *only* potential caregiver for that sick parent. *United States v. Nevers*, Case No. 16-88, 2019 WL 7281929, at *5 (E.D. La., Dec. 27, 2019) (noting how "the PSR indicates Petitioner has multiple other family members who are potential caregivers"); *United States v. Marshall*, Case No. 3:16CR-00004-JHM, 2020 WL 114437, at *3 (W.D. Ky., Jan. 9, 2020) (noting how "the evidence does not reflect that [the defendant] is the only available caregiver"); *United States v. Rodd*, Case No. 13-230 ADM/JSM, 2019 WL 5623973, at *3 n. 5 (D.Minn., 2019) (noting how the defendant "does not qualify under Family Circumstances provision" because he did not show that he was "her only available caretaker option" or that the sick family member was "a minor child or a spouse"). *Cf. United States v. Hunter*, Case No. 3:06-cr-61, 2020 WL 127711, at *3 (S.D. Ohio, Jan. 10, 2020) (describing how a defendant could not meet his burden where his "sister who is a busy nurse practitioner [and] has a family of her own to take care of" needed the assistance of the defendant "in taking care of their mother"). The failure to do so is fatal to any request for compassionate release. *See United Sates v. Laurenti,* Case No. 16-CR-60340-BB, DE 220:5 (S.D. Fla., Dec. 17, 2019) (denying

8

motion because "it is apparent that the Defendant is not the only family member capable of caring for the minor children").

Third, the defendant must show that circumstances are truly extraordinary because compassionate release does not allow a defendant to shorten a sentence to care for a family member the way "many families have to take time off from work to care for an aging parent." *Marshall*, 2020 WL 114437, at *3. Indeed, as several district courts have observed, "one consequence of incarceration is that the parent/child relationship suffers," *United States v. Burbidge*, 2019 WL 4863481, at *4 (D.N.D., 2019), and "[m]any, if not all inmates, have aging and sick parents." *United States v. Ingram*, Case No. 2:14-cr-40, 2019 WL 3162305, at * 2 (S.D. Ohio, July 16, 2019). The circumstances, therefore, must be truly "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A).

## ARGUMENT

### I. HERNANDEZ CANNOT MEET HIS HIGH BURDEN OF ESTABLISHING EXTRAORDINARY AND COMPELLING REASONS FOR RELEASE.

This Court should deny Hernandez's Motion [DE 553] because he cannot meet his high burden of proving truly "extraordinary and compelling" reasons that justify his release.

Hernandez cannot prove that – as opposed to his wife, brother, or two children – *he* is the only possible caregiver for his elderly mother. "Many, if not all inmates, have aging and sick parents." *Ingram*, 2019 WL 3162305, at * 2, and *any* term of imprisonment means that certain obligations, like caring for an elderly parent, will

fall on other family members. For example, Hernandez's brother or his wife might need to "take time off from work to care for an aging parent." *See Marshall*, 2020 WL 114437, at *3. Alternatively, Hernandez's daughter might need to delay her college dreams by a few months to care for her grandmother while Hernandez completes his term of imprisonment. Finally, the Hernandez family might have to use their net worth of $184,735 [PSI ¶ 95] or a portion of the $8,750 per month that Hernandez's wife currently earns to hire appropriate care for Hernandez's mother over the next year and a half [DE 553-1:25]. Because Hernandez cannot show that his wife, his brother, his two daughters, or even Hernandez's own net worth are unable to support his elderly mother, his claim fails. *See Nevers*, 2019 WL 7281929, at *5; *Marshall*, 2020 WL 114437, at *3; *Rodd*, 2019 WL 5623973, at *3 n. 5; *Hunter*, 2020 WL 127711, at *3.

Hernandez's reliance on *Bucci* is misplaced [DE 553:1-2]. In *Bucci*, the defendant's mother – who had "been disabled [since] suffer[ing] a debilitating cerebral stroke" – had only two "living immediate relatives [which were] her son, the inmate, and her 90-year old brother," who was unable to care for the mother. *United States v. Bucci*, Case No. 1:04-cr-10194-WGY, DE 656 (Motion for Release Under 18 U.S.C. § 3582(c)(1)(A)(i))) at 7-8. Moreover, the mother was "on a fixed income" and was at risk of losing her home because she could not pay for the "home health aids" (*id.* at 8). After the government did not oppose Bucci's motion, the district court granted Bucci's request for compassionate relief. *United States v. Bucci*, 409 F.Supp.3d 1, 2, 2019 WL 5075964, at *2 (D.Mass. 2019). The district court reasoned,

10

"When a defendant is the 'only available caregiver' for an incapacitated parent (perhaps a more unique occurrence given that inmates *may have siblings or other family members able to care for their parents*), then, it is likewise an 'extraordinary and compelling' reason warranting compassionate release." *Id.* (emphasis added). Thus, unlike in our case, there simply was *no other family member* in *Bucci* who could care for the elderly mother, whether financially or physically. *See also United States v. Lopez*, Case No. 91-CR-317-UU, DE 481:6 (S.D. Fla., Jan. 23, 2020) ("While at least one court has granted compassionate release based on family circumstances expressly prescribed in subsection (C), this Court does not deem it appropriate to grant relief on this basis in this case.") (citing *Bucci*, 409 F.Supp.3d 1).

While we all sympathize with the challenges that the greater Hernandez family faces in caring for their sick mother, when this Court imposed a sentence of incarceration, it recognized that "one consequence of incarceration is that the parent/child relationship suffers," *Burbidge*, 2019 WL 4863481, at *4. These bonds include both the parent/child relationship between Hernandez and his two young daughters and the parent/child relationship between Hernandez and his elderly mother. By imposing a sentence of incarceration, however, this Court recognized that, while these bonds would suffer, a sentence of incarceration was still warranted to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," 18 U.S.C. § 3353(a)(2).

11

## II. HERNANDEZ HAS NOT EXHAUSTED HIS REMEDIES.

As the proponent of the motion, a defendant bears the burden of proving both that he or she satisfied the procedural prerequisites for judicial review—*i.e.*, that he or she "exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *United States v. Leverette,* 721 F. App'x 916, 917 (11th Cir. 2018) (exhaustion of Bureau of Prisons remedies is a requisite for judicial review); *United States v. Roberson,* 746 F. App'x 883, 885 (11th Cir. 2018) (same). Hernandez's Mpotion also fails because he did not exhaust his administrative remedies. When the Warden denied Hernandez's request on October 21, 2019, the Warden explained, "You have the right to appeal this decision via the Administrative Remedy Process" [DE 553-1:38]. Hernandez has not met his burden of showing that he properly did so.

## CONCLUSION

For these reasons, the United States of America respectfully requests that this Court deny Defendant Bartolo Hernandez's Motion to Modify Sentence Pursuant to the First Step Act and Section 3582(c)(1)(A) [DE553].

Respectfully submitted,

ARIANA FAJARDO ORSHAN
UNITED STATES ATTORNEY

/s/ H. Ron Davidson
H. Ron Davidson
Assistant United States Attorney
Court ID No. A5501144
99 Northeast 4th Street
Miami, Florida 33132-2111
Tel: (305) 961-9405
Fax: (305) 530-7976

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 17, 2020, I filed this document electronically with the Court's CM/ECF system.

/s/ H Ron Davidson
H. Ron Davidson
Assistant United States Attorney